UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause Nos. 1:10-cr-0102-WTL-KPF-01 |
| ) | and |
| ) | District of Minnesota Cause No.: |
| ) | CR10-312-PAM/AJB to be replaced by |
| ) | (Southern District of Indiana Rule 20 |
| KEXUE HUANG, ) | cause no.) |
| a/k/a "John," ) | |
| ) | |
| Defendant. ) | |

## PLEA AGREEMENT

The United States of America, by counsel, Joseph H. Hogsett, United States Attorney for the Southern District of Indiana, and B. Todd Jones, United States Attorney for the District of Minnesota, and KEXUE HUANG, a/k/a "John," in person and by counsel, Jamie Edgar and Rom Byron, hereby inform the Court that a Plea Agreement has been reached in this cause pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A) and 11(c)(1)(C) and the following are its terms and conditions:

1. KEXUE HUANG, a/k/a "John" agrees to plead guilty to Count Five of the Indictment in the cause 1:10-cr-0102-WTL-KPF-01, which charges a violation of Title 18, United States Code, Sections 1831(a)(1), 1831(a)(4) (Theft, and Attempted Theft, of Trade Secrets to Benefit a Foreign Government and Instrumentality) and Title 18, United States Code, Section 2 (Aiding and Abetting), punishable by a term of imprisonment of up to fifteen (15)

years, a fine of up to $500,000, and a term of supervised release following any term of imprisonment of up to three (3) years.

2. The elements of the offense charged in Count Five of the Indictment returned under cause number 1:10-cr-0102-WTL-KPF-01 are:

> FIRST: The defendant, intending and knowing that the offense would benefit any foreign government, foreign instrumentality, or foreign agent;
>
> SECOND: The defendant knowingly stole and without authorization did appropriate, take, carry away, conceal, and by fraud, artifice, and deception obtain a trade secret;
>
> THIRD: The information was in fact a trade secret.

3. KEXUE HUANG, a/k/a "John" agrees to plead guilty to Count One of the Indictment in the cause CR10-312-PAM/AJB, which charges a violation of Title 18, United States Code, Section 1832(a)(2) (Theft of Trade Secrets), punishable by a term of imprisonment of up to ten (10) years, a fine of up to $500,000, and a term of supervised release following any term of imprisonment of up to three (3) years. The defendant shall agree to a Federal Rule of Criminal Procedure, Rule 20 transfer of the above-captioned CR 10-32-PAM/AJB matter to the Southern District of Indiana.

4. The elements of the offense charged in Count One of the Indictment returned under cause number CR10-312-PAM/AJB are:

> FIRST: The defendant, intended to convert a trade secret to the economic benefit of anyone other than the owner;

|  |  |
|---|---|
| SECOND: | The information was, in fact, a trade secret; |
| THIRD: | The defendant knowingly, and without authorization, did copy, duplicate, download, send and otherwise convey the trade secret; |
| FOURTH: | The defendant intended, or knew, the offense would injure the owner of the trade secret and would economically benefit a person or persons other than the trade secret's owner; and |
| FIFTH: | The trade secret was related to or included in a product that is produced for or placed in interstate or foreign commerce. |

## GENERAL PROVISIONS

5. KEXUE HUANG, a/k/a "John" acknowledges that this plea agreement is governed by Federal Rule of Criminal Procedure 11(c)(1)(A) and 11(c)(1)(C) and that if the agreement were accepted and if the defendant continued to accept responsibility as set forth in paragraph 22, the Court would be bound to impose a sentence at an adjusted offense level of 27, and that the amount of the fine, restitution, and the term of supervised release will be left to the discretion of the Court. KEXUE HUANG, a/k/a "John" understands that if the Court decides to impose a fine, restitution, or term of supervised release higher or lower than any recommendation of either party, then KEXUE HUANG, a/k/a "John" will not be permitted to withdraw his plea of guilty for that reason and will be bound by his plea of guilty.

6. KEXUE HUANG, a/k/a "John" further acknowledges that this plea agreement is governed by Federal Rule of Criminal Procedure 11(c)(1)(A) and 11(c)(1)(C), and that pursuant to Federal Rule of Criminal Procedure 11(c)(5), if the Court rejects the plea agreement, the Court will advise the defendant personally in open court that the Court is not bound by the plea

agreement, afford the defendant the opportunity to then withdraw the plea, and advise the defendant that if the defendant persists in a guilty plea that the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.

## WAIVER OF APPEAL

7. KEXUE HUANG, a/k/a "John" understands that he has a statutory right to appeal the conviction and sentence imposed and the manner in which the sentence was determined. Acknowledging this right and in exchange for the concessions made by the United States in this Plea Agreement, as set forth in the sentencing stipulations, below, KEXUE HUANG, a/k/a "John" expressly waives his right to appeal on any ground his conviction of the offenses charged in both counts from both Indictments. KEXUE HUANG, a/k/a "John" also expressly waives his right to contest or seek review of the sentence on appeal on any ground, including the right to appeal the sentence conferred by Title 18, United States Code, Section 3742. Additionally, KEXUE HUANG, a/k/a "John" expressly agrees not to contest, or seek to modify, his conviction or sentence or the manner in which it was determined in any proceeding, including, but not limited to, an action brought under Title 28, United States Code, Section 2255. This waiver of appeal specifically includes all provisions of the sentence imposed in this case, including the length and conditions of the supervised release and the amount of any restitution, fine or forfeiture.

## SPECIFIC PROVISIONS

8. KEXUE HUANG, a/k/a "John," and the United States of America agree and

4

stipulate in reference to cause number 1:10-cr-0102-WTL-KPF-01 to the following statement of facts which need not be proven at the time of plea or sentencing:

  A. During January 2003 until February 29, 2008, KEXUE HUANG, a/k/a "John," was employed as a research scientist in Indianapolis, Indiana at Dow AgroSciences LLC (Dow AgroSciences), a leading international agricultural company providing agrochemical and biotechnology products. In 2005, KEXUE HUANG, a/k/a "John," became a research leader in strain development. In this position, KEXUE HUANG, a/k/a "John," led a team of scientists in the development of the family of *spinosyns*, which included unique, proprietary organic insecticides based upon the soil bacteria *Saccharopolyspora spinosa* (*S. spinosa*) and *Saccharopolyspora pagona* (*S. pagona*).

  B. From the beginning of his employment and afterwards, KEXUE HUANG, a/k/a "John," was aware of his obligations to protect against the disclosure of confidential information and trade secrets belonging to Dow AgroSciences. On January 27, 2003, his first day of employment, KEXUE HUANG, a/k/a "John," signed an Employee Agreement in which he expressly agreed that he would:

> not disclose to anyone or use, directly or indirectly, either during or after my employment, any Confidential Information of Dow AgroSciences, except with the written consent of an officer of Dow AgroSciences or as required in my duties as an employee of Dow AgroSciences.

The agreement specified that confidential information included Dow AgroSciences trade secrets. KEXUE HUANG, a/k/a "John," was aware that Dow AgroSciences had taken reasonable measures to protect the secrecy of its trade secrets and proprietary processes, including the previously noted Employee Agreement which he signed, and the steps summarized in Paragraph five of the Indictment. KEXUE HUANG, a/k/a "John," also received regular training

concerning the proper safeguarding of Dow AgroSciences trade secrets and confidential information. KEXUE HUANG, a/k/a "John," was aware of the Dow AgroSciences approval process before publishing any confidential information or trade secrets of Dow AgroSciences, as he had previously used this approval process to obtain permission to publish an article with others. KEXUE HUANG, a/k/a "John," also knew that the trade secrets derived independent economic value from not being publicly known. For example, KEXUE HUANG, a/k/a "John," was aware that through years of research and development, Dow AgroSciences had enhanced the effectiveness and yield of their proprietary organic insecticides, and produced and marketed them globally and throughout the United States. No other company in the world could produce comparable organic products. A few weeks before his termination from Dow AgroSciences, KEXUE HUANG, a/k/a "John," again requested and received a copy of his Employee Agreement, which included the foregoing non-disclosure terms.

        C.     KEXUE HUANG, a/k/a "John," knew that the *Saccharopolyspora pogona* strain, referenced in Count Five of the Indictment, is a Dow AgroSciences trade secret. In particular, KEXUE HUANG, a/k/a "John," became familiar with and gained access to this trade secret through his employment and work at Dow AgroSciences. In addition to the biological material referenced in Count Five of the Indictment and for relevant conduct purposes, KEXUE HUANG, a/k/a "John," became increasingly familiar with and through his Dow AgroSciences employment was given access to and misappropriated several additional trade secrets to include the following: *Saccharopolyspora spinosa* strain used to produce Dow AgroSciences Spinosad products; model *Saccharopolyspora spinosa* strain used for research and development; plasmid

6

used to produce *spinosyn* genes; first *Saccharopolyspora pagona* strain for *butenyl-spinosyns*; *pseudomonas fluorescens* strain; *pseudomonas fluorescens* plasmid; *Saccharopolyspora spinosa* fermentation protocol; not less than two unique plasmids used to increase *butenyl-spinosyn* yield; spinetoram mutation disclosed in published article, "Recent advances in the biochemistry of spinosyns," published through Hunan Normal University ("HNU"), People's Republic of China; optimizing media disclosed in published article, "Recent advances in the biochemistry of spinosyns," published through HNU, People's Republic of China; not less than three unique plasmids used for gene expression in *Saccharopolyspora spinosa;* and not less than two unique E. coli strains used to increase *butenyl-spinosyn* yield.

        D.      Beginning in or around September 2007 and continuing through 2010, KEXUE HUANG, a/k/a "John," stole and used Dow AgroSciences trade secrets outside the parameters of his Dow AgroSciences employment. In particular, KEXUE HUANG, a/k/a "John," stole, transferred, and delivered the Dow AgroSciences trade secrets to two unindicted individuals ("Individual #1 and Individual #2) and others in the People's Republic of China and Germany. Dow AgroSciences did not authorize the transfer or use of these trade secrets with others. While KEXUE HUANG, a/k/a "John," served as a research leader of strain development at Dow AgroSciences, he simultaneously directed Individual #1, Individual #2 and others to conduct unauthorized research in the People's Republic of China and Germany on the Dow AgroSciences strains and trade secrets. The research included specific instructions on strain improvement of *Saccharopolyspora spinosa, pseudomonas fluorescens, butenyl-spinosyns,*

7

among others. Specifically, in 2007 and 2008, KEXUE HUANG, a/k/a "John," provided *spinosyn* biological material to Individual #1 at Hunan Normal University on several occasions. In 2008, Individual #1 began study at the Technical University in Dresden, Germany, as an exchange student. Individual #1 continued his study of *spinosyns* in Germany under the direction of KEXUE HUANG, a/k/a "John," and with the material provided previously by KEXUE HUANG, a/k/a "John". Throughout his *spinosyns*-related studies, Individual #1 communicated electronically and in person with KEXUE HUANG, a/k/a "John," regarding Dow AgroSciences misappropriated material, some of which was recovered in Germany through the investigation in or around August 2010.

    E. In stealing, transferring and using the trade secrets, KEXUE HUANG, a/k/a "John," intended to benefit Hunan Normal University, the National Natural Science Foundation of China, and the 863 Program. Each of these entities is a foreign instrumentality of the People's Republic of China in that the government of the People's Republic of China controlled and provided the use of government funds in the grant process. Specifically, during the period from 2007 through 2010, KEXUE HUANG, a/k/a "John," used and directed ongoing research with the Dow AgroSciences trade secrets with other scientists at Hunan Normal University. KEXUE HUANG, a/k/a "John," submitted multiple funding applications involving the use of the misappropriated trade secrets to the National Natural Science Foundation of China and the 863 Program. At least two of the grant applications funded by the National Natural Science Foundation of China resulted in monetary deposits being made at Hunan Normal University. These monies enabled KEXUE HUANG, a/k/a "John," to further his research on the Dow AgroSciences trade secrets at Hunan Normal University in the People's Republic of China

8

and allowed the university to hire and fund the work of the graduate students. KEXUE HUANG, a/k/a "John," also published articles through Hunan Normal University that included Dow AgroSciences trade secret information. These publications in turn enhanced Hunan Normal University's reputation in the scientific field and positioned the university for tactical and strategic gain.

  F. KEXUE HUANG, a/k/a "John," was pursuing steps to develop and produce the Dow AgroSciences trade secrets in the People's Republic of China. This included identifying manufacturing facilities in the People's Republic of China, which would allow him to compete directly with Dow AgroSciences in the established organic pesticide market.

  G. KEXUE HUANG, a/k/a "John," made statements on numerous occasions that referenced his desire to injure Dow AgroSciences by stealing proprietary and trade secret information. KEXUE HUANG, a/k/a "John," also stated that he had taken Dow AgroSciences materials and trade secrets to the People's Republic of China and to Germany.

  9. KEXUE HUANG, a/k/a "John," and the United States of America similarly agree and stipulate in reference to cause number CR10-312-PAM/AJB to the following statement of facts which need not be proven at the time of plea or sentencing:

  A. From on or about at least March 19, 2009, through on or about at least May 16, 2010, in the State and District of Minnesota and elsewhere, the defendant, KEXUE HUANG, a/k/a "John," knowingly and without authorization copied, duplicated, downloaded, sent, and otherwise conveyed a trade secret belonging to Company A, namely, a component of novel ingredients and processes for a food product that was internally identified by Company A as BD24910 gene sequence. Specifically, KEXUE HUANG, a/k/a "John," was hired by

Company A in March 2008 as a biotechnologist. He worked in one of Company A's sensitive research facilities and had access to trade secrets and other confidential information belonging to Company A. He signed a confidentiality agreement promising never to disclose any trade secrets or other confidential information of Company A.

  B. Through his work, KEXUE HUANG, a/k/a "John," learned of a secret Company A project to create a new food product. The enzyme identified by Company A as BD24910 is a key component in the manufacture of the new food product. The utility of the BD24910 gene sequence in the production of the food product is a trade secret of Company A, as the defendant well knew. Company A took reasonable steps to protect its trade secrets.

  C. On or about March 19, 2009, KEXUE HUANG, a/k/a "John," accessed a shared computer drive at one of Company A's research laboratories and copied the BD24910 DNA sequence file from the shared drive to his personal network drive. During his employment with Company A, KEXUE HUANG, a/k/a "John," also accessed project updates from the shared drive and saved the documents to an external USB flash drive, a violation of company policy. These updates included information regarding the utility of BD24910 in the production of the new food product. On or after March 19, 2009, KEXUE HUANG, a/k/a "John," saved a document containing the BD24910 sequence to the same external USB flash drive. The sequence was identified in the document by Company A's internal identifier ("BD24910"), which was not publicly known. KEXUE HUANG's, a/k/a "John," employment with Company A ended at the beginning of July 2009, following his suspension by Company A. On July 10, 2009, Company A sent KEXUE HUANG, a/k/a "John," a letter reminding him of his obligations under the confidentiality agreement he previously signed.

    D.    In approximately October 2009, KEXUE HUANG, a/k/a "John," who was then working for a company in Boston, began mentoring a student enrolled at Hunan Normal University in the People's Republic of China. The student was conducting experiments to produce the same food product that Company A was developing. On May 16, 2010, without Company A's knowledge or permission, KEXUE HUANG, a/k/a "John," sent an e-mail to the student in the People's Republic of China which contained the DNA sequence for BD24910. In the email, KEXUE HUANG, a/k/a "John," specifically referenced the internal Company A identifier "BD24910".

    E.    The parties stipulate and agree that the trade secret KEXUE HUANG, a/k/a "John," stole and disseminated to another person is related to and included in a product that is produced for and placed in interstate and foreign commerce, and that the defendant knew that his conduct in disclosing the trade secret to an unauthorized person would injure Company A and would economically benefit a person or persons other than Company A. The parties further stipulate and agree that KEXUE HUANG, a/k/a "John," acted knowingly and voluntarily, and knew his actions violated the law.

    10.    The Defendant agrees to keep confidential and refrain from disclosing to, identifying, or communicating with any third party regarding the trade secrets and confidential proprietary information of Dow AgroSciences, Company A, and/or affiliated companies or entities. The Defendant further agrees to refrain from personal use of the trade secrets and confidential proprietary information and not allow them to be further proliferated or used by any third party.

    11.    The Defendant recognizes that pleading guilty may have consequences with

11

respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which defendant is pleading guilty. Defendant also recognizes that removal will not occur until service of any sentence imposed in this case has been completed. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

12. The parties agree that the imposition of a fine in this case is left to the discretion of the Court.

13. The parties understand that federal law requires mandatory restitution for the offenses charged in the Indictments. The parties agree to reserve the right to present evidence and argument regarding the restitution to be ordered and agree that the Court will fashion the appropriate restitution order at the time of sentencing.

14. KEXUE HUANG, a/k/a "John" acknowledges that a mandatory special assessment in the amount of $100.00 for each felony conviction will be assessed pursuant to Title 18, United States Code, Sections 3013, and agrees to pay a total of $200.00 on the date of sentencing or as ordered by the Court to the Clerk, United States District Court.

15. KEXUE HUANG, a/k/a "John" will provide all requested financial information to the Financial Litigation Unit of the United States Attorney's Office for the Southern District of

Indiana and the District of Minnesota for use in the collection of any fines imposed by the Court.

16. The United States Attorney's Office for the Southern District of Indiana agrees, upon sentencing, to move to dismiss the remaining counts charged in the Indictment returned under cause number 1:10-cr-0102-WTL-KPF-01. The government further agrees, as part of this plea agreement, to forgo prosecution based on activity KEXUE HUANG, a/k/a "John" engaged in beginning in or around December 2010 that was discussed on or about January 20, 2011 with an individual known to the parties and referred to herein as, "F.B."

17. The parties agree that if any party to this Plea Agreement believes that another party is not abiding by the terms of this Plea Agreement, that party will request the Court to determine whether the terms of the Plea Agreement have been breached before any party or specified district takes unilateral action. In a proceeding to determine whether a breach has occurred, any disclosures, documents or other items provided to KEXUE HUANG, a/k/a "John," if any, shall be admissible and the government may, in order to establish any breach by him, rely on any statements and evidence given by him. If the Court determines that KEXUE HUANG, a/k/a "John," has breached the terms of this Plea Agreement, the obligations of the government in this Plea Agreement become null and void. If the obligations of the government become null and void, it is expressly agreed that:

    a. KEXUE HUANG, a/k/a "John" will not be permitted to withdraw his plea of guilty to the offenses described above;

    b. Any and all additional charges against KEXUE HUANG, a/k/a "John" known to the government may be filed in the appropriate district, without regard to any restrictions set forth in this agreement; and

  c. The government may argue for a maximum sentence for the offenses to which KEXUE HUANG, a/k/a "John" has pleaded guilty.

18. The terms of this agreement shall not be binding on the Office of the United States Attorney for the Southern District of Indiana or the District of Minnesota nor upon the Defendant, KEXUE HUANG, a/k/a "John," until signed by him, defense counsel, and by counsel for the government.

19. KEXUE HUANG, a/k/a "John" understands that the obligations of the government in this Plea Agreement are expressly contingent upon his abiding by federal and state laws.

20. KEXUE HUANG, a/k/a "John" acknowledges and agrees that nothing in this agreement shall protect him in any way from prosecution for any offense not specifically covered by the Indictments returned as referenced herein or committed after the date of this agreement.

## SENTENCING GUIDELINES STIPULATIONS

21. Pursuant to Section 6B1.4 of the Sentencing Guidelines, the parties agree to the Stipulations below. The parties understand and agree that these Stipulations are binding on the parties but are only a recommendation to the Court and that the Court will determine the advisory sentencing guidelines applicable in this case. The parties agree that no stipulation regarding any factors in Chapter 4, Criminal History Category, of the Sentencing Guidelines has been made, and that such determination will be made by the Court.

  A. The base offense level for the violations alleged in Count Five of the Southern District of Indiana Indictment and Count One of the District of Minnesota Indictment is a level 6. U.S.S.G. § 2B1.1(a)(2).

B.   Because the offense alleged in Count Five of the Southern District of Indiana Indictment involves the misappropriation of a trade secret and the defendant knew or intended that the offense would benefit a foreign government, foreign instrumentality, or foreign agent, the base offense level is increased by 2 levels to a level 8. U.S.S.G. § 2B1.1(b)(5).

C.   Because the offenses alleged in Count Five of the Southern District of Indiana Indictment and Count One of the District of Minnesota Indictment involved an abuse of position of private trust, and also involved the use of a special skill, the base offense level is increased by 2 levels to a level of 10. U.S.S.G. § 3B1.3.

D.   Because the aggregated loss from the offenses alleged in Count Five of the Southern District of Indiana Indictment and Count One of the District of Minnesota Indictment exceeded $7,000,000.00 but is less than $20,000,000.00, the base offense level is increased by 20 levels to a level 30. U.S.S.G. § 2B1.1(b)(1)(K).

## ACCEPTANCE OF RESPONSIBILITY

22.   To date, KEXUE HUANG, a/k/a "John" has demonstrated a recognition and affirmative acceptance of responsibility for his criminal conduct. Based upon his willingness to accept a plea agreement and enter a plea of guilty to the criminal conduct noted in this agreement, the Government agrees that KEXUE HUANG, a/k/a "John" should receive a two (2) level reduction provided he satisfies the criteria set forth in Sentencing Guideline § 3E1.1(a) and (b) up to and including the time of sentencing. KEXUE HUANG, a/k/a "John" timely notified the government of his intention to enter a plea of guilty, thereby permitting the government and the court to allocate their resources efficiently. After KEXUE HUANG, a/k/a "John" enters a plea of guilty and contingent upon a continued recognition and acceptance of responsibility, the government intends to file a motion pursuant to U.S.S.G. § 3E1.1(b) requesting that the Court decrease the offense level by one (1) additional level. The parties reserve the right to present the evidence and arguments concerning KEXUE HUANG, a/k/a "John" acceptance of responsibility at the time of sentencing.

## FINAL PROVISION

23. KEXUE HUANG, a/k/a "John" acknowledges that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this document, to induce him to plead guilty. This document is the complete and only plea agreement between KEXUE HUANG, a/k/a "John" and the United States Attorney for the Southern District of Indiana and for the District of Minnesota and supersedes all prior agreements or understandings, if any, whether written or oral. This plea agreement may only be modified by the parties either in writing, signed by all parties and filed with the Court, or on the record in open court.

Respectfully submitted,

JOSEPH H. HOGSETT
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF INDIANA

B. TODD JONES
UNITED STATES ATTORNEY
DISTRICT OF MINNESOTA

8/9/11
DATE

By: Cynthia J. Ridgeway
Assistant United States Attorney
Southern District of Indiana

8/9/11
DATE

Mark L. Krotoski
Assistant United States Attorney

8/9/11
DATE

Evan C. Williams
Trial Attorney, United States Department of Justice

16

8/9/11
DATE

_____
Jeffrey Paulsen
Assistant United States Attorney
District of Minnesota

09/08/2011
DATE

_____
KEXUE HUANG, a/k/a "John"
Defendant

8.9.11
DATE

_____
Jamie Edgar
Attorney for Defendant

8/9/11
DATE

_____
Rom Byron
Attorney for Defendant

17

## STATEMENT OF THE DEFENDANT

I have read the entire Plea Agreement and discussed it with my attorney.

I understand all the terms of the Plea Agreement and those terms correctly reflect the results of plea negotiations.

I am fully satisfied with my attorney's representation during all phases of this case.

I am freely and voluntarily pleading guilty in this case.

I am pleading guilty as set forth in this Plea Agreement because I am guilty of the crime to which I am entering my plea.

My attorney has informed me, and I understand, that I have the right to appeal any conviction and sentence that I receive, unless I have waived my right to appeal as part of this Plea Agreement. If I have not waived my right to appeal, I understand that I must file a Notice of Appeal within 10 days of the entry of the judgment in this case; I further understand that the Clerk of the Court will prepare and file a Notice of Appeal on my behalf if I ask that to be done. I also understand that the United States has the right to appeal any sentence that I receive under this Plea Agreement.

Finally, my attorney has informed me, and I understand, that if I provide or cause to be provided materially false information to a judge, magistrate-judge, or probation officer, then Section 3C1.1 of the Sentencing Guidelines allows the Court to impose a two (2) level increase in the offense level.

09/08/2011
DATE

_____
KEXUE HUANG, a/k/a "John"
Defendant